**HUNT COUNTY v. WHITE et al.　(No. 9634.)**

(Court of Civil Appeals of Texas. Dallas. May 1, 1926. Rehearing Denied June 5, 1926.)

1. **Indemnity** ⟋⟍9(1)—Instrument reciting that signers guaranteed "not exceeding $100 toward acquiring right of way" for road held guaranty to county of whatever sum, not exceeding $100 by each signer, it expended to procure right of way (Loc. & Sp. Laws 33d Leg. [1913], p. 196, § 24).

In view of practice of county under Loc. & Sp. Laws 33d Leg. [1913], p. 196, § 24, and conditions surrounding its execution, instrument delivered to county, reciting that signers guaranteed "not exceeding $100 toward acquiring the right of way" of road held not ambiguous, but guaranty to county of whatever sum, not exceeding $100 by each signer it expended to secure right of way, and not a joint obligation in maximum amount of $100.

2. **Evidence** ⟋⟍462—Rule permitting oral evidence to show purpose of written instrument does not permit oral evidence to contradict character or nature of liability expressed in instrument itself.

Rule permitting oral proof to show purpose of instrument does not go to extent of permitting oral evidence to contradict character or

nature of liability expressed in instrument itself.

3. **Evidence** ⟋⟍413—Where instrument clearly promised to pay county sum expended to secure right of way for road, held that evidence as to any signer's understanding thereof or other conversations in relation thereto was inadmissible.

Where instrument clearly promised to pay county whatever sum, not exceeding $100 by each signer, that county expended to secure right of way for road, *held* that evidence as to understanding of any signer of what he was guaranteeing, meaning of instrument, or what county's engineer may have told him, was inadmissible to contradict instrument.

Appeal from District Court, Hunt County; J. M. Melson, Judge.

Suit by R. N. White and others against Hunt County. Judgment for plaintiffs on their action and on defendant's cross-action, and defendant appeals. Reversed and remanded.

Olin P. McWhirter and Clark & Clark, all of Greenville, for appellant.

McMahan, Dohoney & Dial and T. W. Thompson, all of Greenville, for appellees.

JONES, C. J. Appellees R. N. White and fifty others were awarded judgment in the district court of Hunt county, Tex., against appellant, Hunt county, perpetually enjoining appellant, its officers and attorneys, from the prosecution of a suit filed in a justice court in said county against appellee R. N. White, and from instituting and prosecuting a similar suit against each of the other appellees. Judgment was also rendered against appellant on its cross-action, in which it sought to recover against appellees a money judgment in the sum of $3,184.45 on an alleged guaranty made in its favor by appellees. Appellant has duly prosecuted an appeal to this court.

[1] The respective contentions of appellant and appellees arise from the construction to be given a certain instrument in writing, executed by appellees and four additional persons not parties to this suit and delivered to appellant. The said instrument is as follows:

"We, the undersigned, hereby guarantee the sum of not exceeding $100 toward acquiring the right of way on the Greenville-Quinlan road as now laid out from the end of the present pike south to a point heretofore guaranteed by citizens of Quinlan. The approximate acreage needed is 25 acres; the estimated amount necessary is $100 per acre—equals $2,500."

Appellees' contention is based upon the theory that the above instrument is ambiguous, in that it does not appear from the language of the instrument whether it was in-

tended as a guaranty to the landowners, whose land would be taken for the right of way of the said Greenville-Quinlan road, that appellant would pay them for the taking of their land, or whether it was intended as a guaranty to appellant against the payment of any money for said right of way, and that oral evidence was admissible to determine the real purpose of said instrument in this respect. This theory was presented by appropriate pleading by appellees, in which it was alleged that the intent of the parties who executed said instrument, and the understanding of appellant when it accepted said instrument, was that it merely guaranteed to the said landowners that they would receive compensation for the land taken for said right of way. The said pleading also alleged that the county had fully paid for all land taken for right of way, and that no liability then rested on the signers of said instrument because the guaranty had been fully discharged according to its real intent and purpose. Appellees also contended that, according to the terms of said instrument, it was a joint obligation for a maximum amount of $100 only. The injunction sought against appellant, as shown by the allegations of the petition, was rested on allegations to the effect that appellant had construed said instrument to be a guaranty to it against liability for the purchase of the right of way for said road; that each signer of said instrument was liable to appellant for reimbursement for money expended in securing said right of way in a sum not exceeding $100; that appellant had expended the said sum of $3,184.45 in the purchase of said right of way; that appellant was demanding reimbursement from appellees in said sum, and had instituted suit in the justice court of Hunt county against appellee White to recover from him the sum of $100, and was threatening to institute in the justice courts of Hunt county a similar suit for a corresponding amount against each of said appellees; that said several suits would entail great and unnecessary costs and expense on appellees, and that, in order to avoid a multiplicity of suits, they prayed for the issuance of injunction.

Appellant's contention in this case rests upon the theory that there is no ambiguity in said instrument in respect to the claim of ambiguity by appellees, and that, in this respect, when the said instrument is viewed in the light of the policy of the county in reference to the construction of the various roads authorized under the special road law enacted for appellant, the said instrument is a plain unambiguous guaranty to the county against expenditure of any money for said right of way. This contention is presented by appropriate pleading on the part of appellant. Appellant alleged that each party to said instrument intended to give his individual guaranty in a sum of money not exceeding $100, and that the total guaranty was in a sum not exceeding the amount of money appellant would be compelled to expend in securing said right of way. Appellant also alleged that it had no objection to litigate the entire matter in one suit, instead of the several suits it had contemplated bringing, and filed a cross-action against all of said appellees to recover from them the said sum of $3,184.45.

The trial court adopted appellees' theory as to the ambiguity of said instrument, and, over appellant's timely objections, permitted evidence of a number of appellees as to their understanding of the purpose of said instrument when same was signed. This purpose, as shown by said testimony, was in line with appellees' allegations on this issue, and is sufficient, if admissible, to sustain the finding of the jury on the one issue submitted. This finding is that appellees understood at the time they signed the contract introduced in evidence that same was a guaranty to the landowners that Hunt county would pay any sum or sums of money for the right of way of the public road mentioned in said contract.

In line with its theory, appellant requested peremptory instruction in its favor, timely objected to the submission of said issues to the jury, and filed a motion for judgment non obstante veredicto, and has assigned error on the adverse ruling of the court in respect to each of the above matters. Appellant also reserved a bill of exception to the admission of the evidence of appellees on the construction of said instrument.

A special road law had been enacted for Hunt county. Under this road law, $2,000,-000 in bonds had been voted and a number of roads surveyed, mapped, and platted for construction. These roads radiated from Greenville, the county seat of said county. At the time this instrument was drawn, appellant had $1,176,438.20 of the proceeds of the sale of said bonds on hand. The Greenville-Quinlan road extended from Greenville through the town of Quinlan and to the south boundary line of Hunt county. The construction necessary for this road began at about 7 miles out of Greenville, at the terminus of an older road, and extended to said county line. Appellees and other residents of Greenville were very desirous of having an early completion of this road.

Section 24 of said special road law provides:

"When said maps, plans, details, profiles, and specifications are completed, and have been duly considered and adopted by the board, the board shall begin its construction * * * of that road first, upon which the residents, land owners or other persons shall offer the greatest aid or inducement in the matter of labor, right of way and other available help toward the laying out and construction of such road; and, second, upon the road where the next greatest aid or inducements are offered, and so on, until com-

pleted." Local and Special Laws Thirty-Third Legislature, Regular Session (1913), p. 196.

Acting under the authority conferred by this section of the special road law, appellant would not begin the construction of any road until the right of way was donated or it was guaranteed against loss in procuring same. Certain citizens of Quinlan had guaranteed to appellant the right of way over a portion of this said road. There remained another portion of said road in which the right of way had neither been donated · nor guaranteed. Appellees knew that, under its policy, appellant would not build the road at the time they desired its construction unless the cost of this remaining right of way either had been donated or guaranteed. Under this condition the Chamber of Commerce of Greenville took the matter in hand, with the result that the said instrument forming the basis of this suit was executed and delivered to appellant, and, in reliance thereon, appellant secured the right of way at said cost and begun at once the construction of the road.

Construing this instrument in the light of the conditions surrounding the parties at the time of its execution, and in the light of the announced policy of appellant in reference to the construction of the roads provided for by the bond issue, we are of the opinion that the instrument is not ambiguous, and that the trial court should have construed it to be a guaranty to appellant of whatever sum of money it expended to secure the right of way on the said portion of the road, and that, as the money so expended by appellant did not exceed the maximum of $100 to each subscriber, appellees were liable to appellant for the sum of $3,184.45. It is plain from the instrument that it is not a joint obligation in the maximum amount of $100. Certainly 55 signatures would not be given to secure such sum of money. Again, to so construe the instrument, it is necessary to deny any meaning to the latter part of it in which it is, in effect, stated that the approximate amount so guaranteed is estimated to be $2,500. We believe that it is plain from the language of the instrument that appellant, and not the landowners, is the subject of guaranty, for the reason that the very obstacle to the building of the road which appellees undertook to obviate was that appellant had not been furnished, without cost to it, a right of way for the road construction.

[2, 3] We are not unmindful of the fact that courts generally make an exception to the rule forbidding the introduction of oral evidence to affect written instruments, where the proof is tendered ·in order to show what was the purpose of the instrument. This exception, however, has never been extended to permit oral evidence to contradict the character or nature of the liability expressed in the instrument itself. Schneider-Davis Co. v. Hart, 23 Tex. Civ. App. 529, 57 S. W. 903; 10 R. C. L. 1039. It being clear that the nature of the instrument in question is one promising to pay to appellant whatever sum, not exceeding $100 by each signer, that is necessarily expended by appellant in securing land from the owners for a definite and fixed portion of the right of way of the Greenville-Quinlan road, evidence as to any private understanding of any signer of said instrument as to what he believed he was guaranteeing, or as to his understanding of the meaning of said instrument, or as to what appellant's engineer may have told him as to what appellant would do in the premises cannot be received in evidence to contradict the plain significance of the instrument he signed.

We are therefore of the opinion that the objection should have been sustained to all of the testimony offered for the purpose of construing the said instrument, that the temporary writ of injunction should not have been granted, and ·that said temporary writ should not have been perpetuated on the trial of the case. We are also of the opinion that, under the record of this case, the signers of the instrument are each liable to appellant for his proportionate share, not exceeding $100, to reimburse the county for the said sum of $3,184.45.

The case is reversed, and remanded for a trial not inconsistent with the opinion herein expressed.

Reversed and remanded.